# AREA WIDE PIT/QUARRY MATERIAL HAULERS AGREEMENT

By and Between the

## CHICAGOLAND DUMP TRUCK HAULERS ASSOCIATION

and

## TEAMSTER LOCALS 142, 179, 301, 325 330, 673, 705, 710, 731 AND 786



All affiliated with the

*International Brotherhood of Teamsters*

and

*Teamsters Joint Council No. 25*

effective

*May 1, 2001 through April 30, 2004*



EXHIBIT 1

**08 C 510**

**JUDGE SHADUR**
**MAGISTRATE JUDGE VALDEZ**

## ARTICLE 16 - SALE AND TRANSFER

16.1 When the Employer sells or transfers its assets to another party, the seller shall pay all accumulated vacation allowances or other benefits due bargaining unit employees on or before the closing of the sale or transfer. The purchaser shall recognize the appropriate Local Union, shall offer all bargaining unit employees employment and shall continue wages, health insurance and pension benefits until a collective bargaining agreement or impasse in reached.

16.2 The Employer shall notify the Union of the sale or transfer of the business at least thirty (30) days prior to the closing date.

16.3 In the event the Employer fails to notify the Union, in accordance with Section 16.2 above, the Employer shall pay six (6) weeks of additional Health/Welfare and Pension contributions for each bargaining unit employee.

## ARTICLE 17 – HEALTH AND WELFARE AND PENSION SEVERANCE TRUST FUND

17.1 The Employer shall contribute into a Trust set up by Trust Agreements now in effect in the aforementioned Local Unions for the payment of Health and Welfare or Pension/Severance benefits, as the case may be, as determined by the appropriate Board of Trustees, the amounts shown in 17.2 below are per week for an employee covered by this Agreement, in accordance with the requirements set forth in the appropriate Appendix of this Article.

17.2 *Schedule of Contributions:*

17.2(a) Health and Welfare Fund

For Employers and their Employees who have not been previously covered by a Teamster pension or severance plan, their participation shall begin on October 1, 2001, or at such later time as they become bound to this Agreement.

*RATES LISTED BELOW ARE BASED UPON WEEKLY CONTRIBUTIONS:*

| Effective Date | L.U. 179 | L.U. 301 | L.U. 330 | L.U. 673 | L.U. 705 |
|---|---|---|---|---|---|
| 10/01/01 | $158.00 | $158.00 | $158.00 | $158.00 | $164.00 |
| 05/01/02 | $162.00 | $168.00 | $162.00 | $162.00 | $164.00 |
| 05/01/03 | $168.00 | $178.00 | $168.00 | $168.00 | $164.00 |

| Effective Date | L.U. 710 | L.U. 731 | L.U. 786 |
|---|---|---|---|
| 10/01/01 | $162.70 | $160.00 | $170.00 |
| 05/01/02 | $170.00 | $170.00 | $180.00 |
| 05/01/03 | $180.00 | $180.00 | $184.00* |

L.U. 325    $3.40 Per Employee/Per All Hours Worked.

L.U. 731    $4.00 Per Employee/Per All Hours Worked.

L.U. 786    *With inclusion of option to allocate.

FOR LOCAL 731 ONLY: The Employer shall pay the above listed contribution rates to the Health and Welfare Fund, Excavating, Grading and Asphalt Craft, Local 731, I.B. of T. (hereinafter called "Health and Welfare Fund") located at 1100 East 31st Street, La Grange Park, Illinois 60526:

*Penalty for Failure to Pay Health and Welfare.* The Employer recognizes the necessity of making prompt Health and Welfare contributions, the possibility that Employees' benefit standing will be placed in jeopardy if contributions are not timely made, and the concern of the Union that all eligible Employees are covered by such contributions.

Whenever the Employer is delinquent in making payments to the Health and Welfare Fund, the Union may strike the Employer to force payments.

This provision shall not be subject to and is specifically excluded from the grievance procedure (Article 19). Additionally, in the event the Employer has been found to be delinquent, the Employer shall be required to pay in addition to the actual delinquency, twenty percent (20%) of the delinquent amount as liquidated damages, and accountant and attorney fees including court costs.

All Employers participating in the Health and Welfare Fund must be incorporated.

17.2(b) Pension Fund

*RATES LISTED BELOW ARE BASED UPON WEEKLY CONTRIBUTIONS:*

| Effective Date | L.U. 179 | L.U. 301 | L.U. 330 | L.U. 673 | L.U. 705 | L.U. 710 |
|---|---|---|---|---|---|---|
| 10/01/01 | $109.00 | $127.00 | $109.00 | $109.00 | $151.00 | $162.70 |
| 05/01/02 | $117.00 | $137.00 | $117.00 | $117.00 | $165.00 | $170.00 |
| 05/01/03 | $123.00 | $147.00 | $123.00 | $123.00 | $179.00 | $179.00 |

L.U. 325    $5.70 Per Employee/Per All Hours Worked.

L.U. 731    $2.80 Per Employee/Per All Hours Worked.

L.U. 786    Effective 10/01/01 $ 44.00 / $ 79.00*
Effective 05/01/02 $ 80.00
Effective 05/01/02 $120.00**

*Any previously signatory Employer contributing at the rate of $44.00 will immediately have their rate increased to $79.00 upon ratification of this Agreement.

**With inclusion of option to allocate.

FOR LOCAL 731 ONLY: The Employer shall pay to the Local Union No. 731 Excavators and Pavers Pension Fund (hereinafter called "Pension Fund"), located at 1100 East 31st Street, La Grange Park, Illinois 60526, the sum of Two Dollars and Eighty Cents ($2.80) per hour effective June 1, 2001, for each hour worked by the Employee covered by this Agreement.

The Employer shall also submit a Remittance Report in a form to be furnished by the Administrators of the Health and Welfare and Pension Fund showing the name of each Employee employed during the period for which the report is made. The Remittance Form and required contributions shall be submitted each month to the Administrator of each Fund not later than the twentieth day of the month following the month for which contributions are due.

17.2(c) For all Locals, during the first year of this Agreement, beginning October 1, 2001, or at such later time as they become bound to this Agreement, employees of employers not previously covered by a Teamsters Pension or Severance Plan, shall be covered by the applicable pension or severance plan in the amount of a contribution for each employee of $40.00 per week worked. Beginning the second year of this Agreement, the contribution shall be raised to $80.00 per week of work. Beginning the third year of this Agreement, the contribution shall be increased to $120.00 per week worked. Any rules pertaining to partial weeks worked that may exist with respect to a particular Local's Pension or Severance Plan will also apply to those contribution requirements.

The Employer agrees that it is bound by and is a party to the Trust Agreements creating the Health and Welfare Fund and the Pension Fund, and all prior and subsequent amendments thereto, as if it had signed the original copy of each of the said Trust Agreements, both of which said Agreements being incorporated herein by reference and made a part hereof; the Employer hereby designates as its representatives on the Board of Trustees of said Funds such Trustees as are named in said Agreements and Declarations of Trust, as Employer Trustees, together with their successors selected in the manner provided in said Agreements and Declarations of Trust, as they may be amended from time to time and further agrees to be bound by all action taken by said Employer Trustees regarding and pursuant to the said Agreements and Declarations of Trust as amended from time to time.

*Failure to Pay Pension.* The Employer recognizes the necessity of making prompt Pension contributions when required, the possibility that Employees' benefit standing could be placed in jeopardy if required contributions are not timely made, and the concern of the Union that all eligible Employees are covered by such required contributions.

Whenever the Employer is delinquent in making required payments to the Pension Fund, the Union may strike the Employer to force required payments. This provision shall not be subject to and is specifically excluded from the grievance procedure (Article 19). If an Employer fails to pay any required contributions due in accordance with this Article, the Trustees of the respective Fund may assess the Employer twenty percent (20%) of the required contributions due as liquidated damages in addition to all reasonable attorney fees, accountant fees and cost of collection, including court costs.

All Employers participating in the Pension Fund must be incorporated.

17.3 *Conditions*

17.3(a) Provisions and conditions relating to payment of the foregoing benefits are set forth in Appendix A for Health and Welfare and in Appendix B for Pension of this Article. These appendices form part of and are deemed incorporated into this Agreement.

17.3(b) With respect to benefits, any disagreement as to eligibility, time and method of payments, payments during periods of employee illness or disability, methods of enforcement of payment and related matters shall be determined by the Trustees of the Fund concerned. The Fund shall, in all respects, be administered in accordance with the Trust Agreement.

17.4 It is understood and agreed that the sole liability of the Association, or any Employer, under the above entitled Health and Welfare and Pension/Severance programs, shall be the payment of its contribution to the above respective Trusts, as provided above. Neither the Association nor any Employer shall be liable for the purchase of any Health and Welfare or Pension/Severance insurance, or the payment of any Health and Welfare or Pension/Severance benefit.

17.5 All Trust Agreements jointly entered into and executed pursuant to the above provisions shall be considered as a part of this Agreement to the extent they are not inconsistent therewith.

17.6 Employer hereby agrees to be bound by the Agreements and Declarations of Trust creating said Fund and by any future amendments thereto to the extent they are not in conflict with this Agreement, and hereby designates as its representatives on the Boards of Trustees, such Trustees as are named in said Agreements and Declarations of Trust, as Employer Trustees, together with their successors selected in the manner provided in said Agreements and Declarations of Trusts, as they may be amended from time to time; and further, agrees to be bound by all action taken by said Employer Trustees pursuant to the said Agreements and Declarations of Trust as amended from time to time.

17.7 The Employer agrees to make available to the Trustees or their designee during normal business hours, payroll records and other employment records necessary to ascertain that contributions required under this Article have been paid correctly and in full.

17.8 If an Employer fails to pay any contributions due in accordance with Article 17, the Trustees of the Fund concerned may assess the Employer a charge of 1½% per month of the contributions due, in addition to all reasonable attorneys' fees and costs of collection and costs of audit. The contributions for each employee shall not exceed fifty-two (52) weeks in any calendar year, excepting those years which have fifty-three (53) Saturdays. The contributions of each Employer shall be paid to said Fund on a monthly basis and shall be sent by each Employer not later than the fifteenth (15th) day of the month following the first month of employment.

17.9 The obligation to make Health and Welfare and Pension/Severance contributions shall continue during periods when a new Collective Bargaining Agreement is being negotiated, unless there is a work stoppage or lockout.

## APPENDIX A - HEALTH AND WELFARE

A.1 Each Employer shall pay the amount per week stated in Article 17.2(a) as of the appropriate date stated therein for each regular employee covered by this Agreement who performs any work in such week into a Trust Fund set up by Trust Agreements now in effect in the aforementioned Local Unions for the payment of Health and Welfare benefits as determined by a Board of Trustees. Payment shall be retroactive to the first day of employment for new employees, provided they have completed their probationary period.

A.2(a) The amount in accordance with Article 17.2(a) per employee per week shall be contributed for each employee, other than casual or emergency employees covered under the Collective Bargaining Agreement for any week in which such employee performs any service for the Employer, even when such service is not performed under the terms of the Collective Bargaining Agreement.

A.2(b) Payment shall be made on casual or emergency employees who are defined, for this purpose only, as employees who are not on a seniority list and such payment shall be made for the days actually worked at the rate of twenty percent (20%) of the weekly amount stated in Article 17.2(a) for each such day.

23

A.2(c) If an employee is absent because of non-occupational illness or injury, the Employer shall continue to make the required contribution for a period of four (4) weeks.

A.2(d) If an employee is absent because of occupational illness or injury, the required contribution shall be made until the employee returns to work, or for a period of one (1) year, whichever is shorter.

A.2(e) All leaves of absence, when granted by the Employer in addition to the requirements of the parties, shall be conditioned upon the Employer, the Union and the employee making satisfactory arrangements for the employee to pay the applicable weekly contribution to the Health and Welfare Fund, either through his Employer or directly to the Union for the period of such granted leave of absence.

A.2(f) Payment into the Health and Welfare Fund shall be made during periods of paid vacation subject to the fifty-two (52) week annual limit stated in Article 17.8.

A.2(g) The Employer recognizes the necessity of making prompt Health and Welfare contributions, the possibility that employee's benefit standing will be placed in jeopardy if such contributions are not timely made, and the concern of the Union that all eligible employees are covered by such contributions.

A.2(h) Whenever the Employer is delinquent in making payments to the Health and Welfare Fund, the Union may strike the Employer to force payments. The provision shall not be subject to and is specifically excluded from the grievance procedure (Article 19). Additionally, in the event the Employer has been found to be delinquent, the Employer shall be required to pay in addition to the actual delinquency, ten percent (10%) of the delinquent amount as liquidated damages, and accountant and attorneys fees including court costs.

A.2(i) A calendar week is Sunday through Saturday.

A.3 Health & Welfare Reserve (FOR LOCALS 301 & 330 ONLY)

The Employer agrees to deduct from the paycheck of employees covered by this Agreement, voluntary contributions to a reserve for the Health and Welfare Fund. The Employer, upon receipt of a written check-off authorization form signed by the employee, agrees to deduct the amount of $.50, $.75 or $1.00 per hour, whichever is specified by the employee, for the express purpose of reserving such monies to be used solely for the purpose of payment of self-contribution to the Health and Welfare Fund while the employee is off work, and the employer is not obligated to contribute on his behalf.

Monies so deducted shall be kept separate and apart from the Employer's general funds, and shall be held in trust by the Employer for the benefit of the employee until remitted to the Health and Welfare Fund.

The Employer shall remit such deductions on a monthly basis to the local Union's Health and Welfare Fund, the total amount deducted, along with the name of each employee on whose behalf the deduction is made, the employee's social security number and the amount deducted from that employee's paycheck.

If an employee does not deplete the entire amount of his "reserve" contributions, the remainder will be refunded back to the employee on June 1st of the following year. It is the express responsibility of the employee to cover any deficit which may occur after his/her "reserve" contributions have been depleted.

Whenever the employee wishes to discontinue such deductions, he/she shall notify both the Employer and the Local Union in writing before the twelfth (12th) day of the month, to discontinue such deductions effective the first of the following month.

It is agreed that all such deductions shall be on a voluntary basis only.

It is further agreed that this Section A.3 shall not apply until the Local Union's Health and Welfare Fund has established a procedure to receive and account for the voluntary employee contributions provided for in this Section or until the Local Union has established a procedure to receive and account for the voluntary employee contributions provided for in this section.

A.4 FOR LOCAL 786 ONLY: Each Employer shall contribute to Local 786 Building Material, Chauffeurs, Teamsters and Helpers Welfare Fund of Chicago, which shall be jointly administered by Employer Trustees of Union Trustees as provided in the Trust Agreement, the amount per week stated in Article 17.2(a) as of the appropriate date stated therein for each employee covered by this Agreement who performs work on any two (2) calendar days in any calendar week, regardless of the number of hours worked, beginning with the first such week of employment. Contributions shall also be made for the weeks of paid vacation, but not if the employee's vacation time occurs during a period of layoff, leave of absence for illness.

A.5 FOR LOCAL 786 ONLY: Whenever the Trustees of the Local 786 Building Material, Chauffeurs, Teamsters and Helpers Welfare Fund of Chicago shall certify to the Employer that the assets of said Fund are less than Two Hundred Fifty Thousand Dollars ($250,000.00), each Employer shall contribute, effective 30 days after receipt of notice thereof to the Employer, an additional amount (not to exceed Eighty Cents ($.80) per week) as determined by said Trustees, for each week of employment as defined by said Trustees, for each week of employment as defined in A.1. Such additional contributions shall continue to be made by such Employer until the said Trustees shall certify to the Employer that the assets of said Trust exceed Five Hundred Thousand Dollars ($500,000.00), at which time such additional contributions shall cease and shall not be again resumed until the said Trustees shall again certify to the Employer that the assets of the Welfare Fund Trust are less than Two Hundred Fifty Thousand Dollars ($250,000.00).

## *APPENDIX B - PENSION*

B.1 The parties to this Agreement agree to establish a Pension Fund or to pay into an established Pension Fund for the purpose of providing Pension benefits for the employees covered by this Agreement. The Pension Fund shall be administered by a Board of Trustees in accordance with a Trust Agreement.

B.2(a) Each Employer shall pay into the Pension Fund the amount per week stated in Article 17.2(b) and 17.2(c) as of the appropriate date stated therein for each regular employee covered by this Agreement who performs work on any two (2) calendar days in any calendar week.

Employer's signatory to this Agreement with Teamsters Local Union No. 301 and Teamsters Local Union No. 330, the <u>PENSION ONLY</u> will be paid in the following manner:

Starting with the first worked day of the week, the Employer will pay twenty-five percent (25%) of the weekly contribution for each day the employee worked (Sunday through Saturday), with a cap of four (4) days.

The total amount of contributions for Health and Welfare and Pension from Teamsters Local Union No. 301 and 330 is the same, however, the individual amounts in each Union may vary.

B.2(b) Payment shall be made on casual or emergency employees who are defined, for this purpose only, as employees who are not on a seniority list and such payment shall be made for the days actually worked at the rate of twenty percent (20%) of the weekly amount stated in Article 17.2(b), and 17.2(c) for each such day.

B.2(c) Pension contributions shall be paid for employees who have been on the Employer's payroll for not less than thirty-one (31) days. If an employee is absent because of non-occupational illness or injury, the Employer shall continue to make the required contributions for a period of four (4) weeks.

B.2(d) If an employee is absent because of occupational illness or injury, the required contributions shall be made until the employee returns to work or for a period of one (1) year, whichever is shorter.

B.3 FOR LOCAL 786 ONLY: *Pension Trust Fund.* Each Employer shall contribute to Local 786 Building Material, Chauffeurs, Teamsters and Helpers Pension Fund of Chicago, which shall be jointly administered by Employer Trustees of Union Trustees as provided in the Trust Agreement, the amount per week stated in Article 17.2(b) as of the appropriate date stated therein for each employee covered by this Agreement who performs work on any two (2) calendar days in any calendar week, regardless of the number of hours worked, beginning with the first such week of employment. Contributions shall also be made for the weeks of paid vacation, but not if the employee's vacation time occurs during a period of layoff or leave of absence for illness.

B.4 *Severance Trust Fund.* Each Employer shall contribute to the Local 786 Severance Fund, the amount per week stated in Article 17.2(a) as of the appropriate date stated therein for each employee who performs work on any two (2) days in any calendar week, regardless of the number of hours worked; provided the employee has been on the Employer's payroll for at least thirty (30) days.

## ARTICLE 18 - WORK PRESERVATION AND PROTECTION OF STANDARDS

18.1(a) The Employer agrees that neither it nor any of its subcontractors on the job site will subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure, road or other work (including quarries, rock, sand and gravel plants, asphalt plants, ready-mix concrete plants established on or adjacent to the job site to process or supply materials for the convenience of the Contractor for job site use) except to a person, firm or corporation, signatory to this labor agreement or an Agreement that meets or exceeds the terms of this Agreement.

18.1(b) The Employer agrees that neither it nor any of its subcontractors for off-site work will subcontract work covered under this Agreement to any Employer who fails to pay an amount equal to or greater than the wage and fringe benefit amounts provided for in this Agreement.

18.1(c) The term overflow work as provided herein is defined as any work in excess of the work otherwise assigned to employees and regular owner-operators. The Employer may subcontract overflow work when all of its employees and regular owner-operators are fully employed. Overflow work may be performed by persons other than Employer's employees and regular owner-operators provided that such subcontracting is not used as a subterfuge to evade the provisions of this Agreement and is done in accordance with all of the other terms of this Agreement. Casual Owner/Drivers and other persons performing overflow work shall be compensated no less than the amount equal to the wages (percentage pay) and fringe benefits being paid to employees and regular owner-operators covered by this Agreement.

18.1(d) The Employer agrees that it will not lease, assign, or subcontract any bargaining unit work to any person, partnership, corporation or business enterprises until, or unless all of the Employer's equipment and work force and regular owner-operators are engaged, and/or the Employer does not own the necessary equipment to perform the work.

18.1(e) If any subcontractor shall become delinquent in the payment or meeting of the obligations set forth above, the Union shall promptly give written notice thereof to the Employer and Subcontractor specifying the nature and amount of such delinquency. More than one such notice may be given with respect to delinquencies. If such notice is given, the Employer shall withhold the amount claimed to be delinquent up to the amount of any sums due and owing by the Employer to such Subcontractor for the job or jobs involved in the delinquency and shall pay and satisfy there from the amount up to the amount withheld of such delinquency by such Subcontractor as follows:

If such Subcontractor does not dispute the existence or amount of such delinquency, the Employer shall forthwith pay the amount of such delinquencies, up to the amount withheld, to the person or fund entitled thereto. Any dispute as to the existence or amount of such delinquency shall be settled by the Union and Subcontractor as provided in Article 19 hereof, if the subcontractor is a signatory to this Agreement, and the Employer shall pay to the person or Funds entitled thereto the amount of such delinquency, up to the amount withheld, as so determined and costs incurred. If the Subcontractor is not a signatory to this Agreement, then the Trustees of the appropriate Fund may sue the Subcontractor involved.

The Employer shall not be liable for any such delinquency occurring more than sixty (60) days prior to the receipt of such written notice from the Union or for any amount beyond what was withheld by the Employer.

18.1(f) If the Union gives written, signed notice to an Employer that a particular carrier is not in compliance with the requirements of this Article with respect to paying the appropriate amounts set forth in this Agreement, the Employer will not contract with such carrier until such time as the said Union gives written notice to the Employer that the carrier is in compliance. The Employer will have reasonable time not to exceed forty-eight (48) hours after notice has been received to cease contracting with a particular carrier in order to make arrangements with a different carrier to handle the work. Upon written, signed notice to the Employers from the Union concerned, that a particular hauler is not in compliance with the foregoing wage rates and other conditions, the Employers will not contract further with said hauler until such time as the Union gives written notice to the Employer that the hauler is in compliance.

18.2 The Union agrees to indemnify and save the Employer and the Association harmless against any claim, demand, suit or other from of liability (including attorney fees and other related expenses) which shall arise out of or by reason of action taken by the Employer with respect to a carrier as a result of the Employer's reliance on notice furnished by the Union pursuant to this Article.

18.3 All past practices contrary to the express conditions under this Article are null and void. No practice contrary to the terms of this Agreement shall hereafter be recognized without prior written notice to the Union, and prior written agreement from the Union, regarding such practice.

18.4 A committee of three (3) members appointed by the Association and three (3) members appointed by Teamsters Joint Council No. 25 ("Joint Council") shall have the authority to review any collective bargaining agreement covering all or part of the work covered under this Agreement to determine whether it meets the economic standards of this Agreement. Either the Association or the Joint Council may request such a review. Moreover, the Joint Council shall be required to provide a copy to the Association of any agreement covering all or a portion of the work covered under this Agreement, before approving said agreement.